IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| LORI McGREGOR, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-2099-JWL |
| | ) | |
| SHANE'S BAIL BONDS, et al | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Lori McGregor brought this action *pro se* to allege violations of her constitutional rights pursuant to 42 U.S.C. § 1983, as well as various state law claims, arising from an encounter at her residence with a bounty hunter and law enforcement officers from the Johnson County, Kansas Sheriff's Office on the evening of July 2nd, 2006. Before the Court are the following motions made by one or more of the defendants: Combined Motion of Defendant Roy Delbert Snyder, Jr., Shane L. Rolf, and Aarecorp Bonding, LP to Dismiss or for Summary Judgment (doc. #12); Defendant Snyder's Motion for Sanctions (doc. #25); Defendant Snyder's Additional Motion for Sanctions (doc. #41); Defendant Snyder's Motion to Dismiss Pursuant to 28 U.S.C. Section 1915(e) (doc. #26); Defendant Snyder's Motion to Strike Supporting Affidavits, Exhibits, and Second Proposed Amended Complaint (doc. #58); Defendant Snyder's Motion to Strike, Objections to Plaintiff's Pleadings and Motion for Extension of Time

(doc. #59); Defendant Snyder's Request for Clarification and Alternative Relief (doc. #63); and Defendant Snyder's Motion to Strike Document 55 and All Plaintiff's Subsequent Pleadings (doc. #64). Also before the Court are the following motions made by plaintiff: Motion to Amend Petition (docs. #29 and 46); Motion for Discovery to be Allowed by Court Under Rule 56(f) (doc. #32); Plaintiff's Response to Defendant Snyder's Motion for Sanctions Filed June 17, 2010, Plaintiff's Second Request for Additional Time to Answer These Two Motions for Dismissal and Sanctions if This Motion is Not Stricken, Plaintiff's Response to Defendant Snyder's Motion to Dismiss Under 28 USC 1915(e), Plaintiff's Motion to Strike Both Pleadings (doc. #53); Plaintiff's Response to Defendant Snyder's Objections to Plaintiff's Motion for Discovery to be Allowed Under Rule 56(f) and for Additional Motion for Sanctions Filed July 1, 2010, Plaintiff's Motion to Strike Pleading (doc. #54); Plaintiff's Motion under Rule 60b1 Section 2857 for Relief from Order of July 14, 2010 Denying Plaintiff Extra Time to Submit Exhibits, Answers to Uncontrovered Facts, and Case Roster, Plaintiff's Motion to Submit Exhibits, Both Specific Exhibits Filed July 14, 2010 and Remaining Exhibits in Support of Her Answer for Defendants' Motion for Summary Judgment Out of Time, Plaintiff's Motion to Submit Her Case and Exhibit Rosters and Her Answers to Defendants' Uncontroverted Facts Out of Time (doc. #55); and Plaintiff's Request for Additional Time to Respond to Defendant Snyder's Supplemental Suggestions…and Notice of Clarification…(doc. #61). For the reasons explained below, the Motion To Dismiss or For Summary Judgment is granted (doc. #12). All other pending motions are denied.

I. Factual and Procedural Background[1]

On July 2nd, 2006, defendant Roy Snyder was looking for a Ms. Jacqueline

McCunn, who had failed to appear at a court hearing. Aarecorp Bonding, LP

---

[1] Defendants included in their motion "statements of uncontroverted facts" pursuant to D. Kan. Rule 56.1(a). Plaintiff did not comply with D. Kan. Rule 56.1. First, D. Kan. Rule 56.1 requires that a plaintiff opposing a motion for summary judgment begin their memorandum in opposition "with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph [and] refer with particularity to those portions of the record upon which the opposing party relies…" Plaintiff did not include any numbered statement of fact in her original opposing memorandum (doc. #38), but sought to file separately her statements of fact (doc. #48), controverting defendants' factual averments, and the exhibits upon which she relies. Second, she did not timely file either of these. The Court had granted her several extensions of time in which to file her documents, and by an order dated June 29th, 2010, gave plaintiff until July 8th to file her response. On July 7th, plaintiff sought yet another extension (doc. #44). The Court denied plaintiff's request on July 8th. On July 9th, plaintiff filed doc. #48, setting forth her version of the facts and controverting the defendants' factual averments. As plaintiff did not timely file this, the Court could consider all of the defendant's factual contentions as admitted. Indeed, plaintiff did not even file her exhibits until July 14th, well past the deadline. The defendants request that this Court disregard plaintiff's untimely filed documents and exhibits. Plaintiff has filed a motion seeking reconsideration of this Court's denial of an extension of time in which to file them (doc. #55). As previously explained, the Court has granted plaintiff adequate time to prepare a response, and the Court denies plaintiff's present motion for reconsideration (doc. #55). However, out of an abundance of caution, the Court considered all of the documents and exhibits plaintiff had filed, regardless of whether she filed them in compliance with the rules of this Court. Plaintiff is warned, however, that this Court generally demands adherence to its procedural rules and plaintiff's numerous requests for extensions of time and consistent failures to adhere to this Court's rules have not been well-received. The Court also notes that the statement of facts upon which the Court relies for summary judgment purposes incorporates plaintiff's untimely filed document controverting the defendants' factual contentions (doc. #48). Using this document, the Court has considered the extent to which the facts are *actually* controverted, as some of plaintiff's responses are irrelevant to the defendants' corresponding factual contentions or indicate that plaintiff does not actually contest the defendants' statement of facts.

("Aarecorp") had engaged Mr. Snyder, a bounty hunter,[2] to locate and apprehend Ms. McCunn. Aarecorp is a limited partnership, and Mr. Shane Rolf is its general partner. Aarecorp uses the trade name Shane's Bail Bonds.[3]

Mr. Snyder drove to Ms. McCunn's last known residence, which, unbeknownst to Mr. Snyder, had since become the plaintiff's residence. Mr. Snyder knocked on plaintiff's door at approximately 6:45 pm[4] and asked plaintiff if she was Jackie. Plaintiff stated that she was not. Plaintiff claims she told Mr. Snyder that Jackie did not live there anymore. Mr. Snyder identified himself as a bail bondsman from Shane's Bail Bonds. Plaintiff quickly told Mr. Snyder to get off her property, cursing at him. Mr. Snyder claims that he then suggested that plaintiff call the police if it would make her feel better. According to plaintiff, she told Mr. Snyder she was calling "the law." In any event, plaintiff telephoned the police, told them Mr. Snyder would not leave her property, and requested their presence.[5] Plaintiff claims that Mr. Snyder was attempting to break into her home and that he damaged her door in the process. Plaintiff never clearly saw Mr.

_____

[2] Plaintiff claims that Mr. Snyder is not licensed as a bounty hunter. The state of Mr. Snyder's licensure is irrelevant to the Court's analysis.

[3] Plaintiff initially sued "Shane's Bail Bonds," and the distinction between the two becomes important for purposes of the pending dispositive motion. However, plaintiff frequently refers to Aarecorp Bonding, LP as "Shane's Bail Bonds" in her briefings for the Court, and the Court therefore occasionally refers to Shane's where plaintiff has done so in her briefing.

[4] Plaintiff claims that Mr. Snyder must have been there before 6:45, but the police records she submitted clearly indicate that she called the police to complain of Mr. Snyder's presence at approximately 6:45 pm. Whether he was there at 6:35 or 6:45 is irrelevant to this Court's analysis.

[5] Plaintiff actually called the police twice that evening, each time requesting their presence, before the police arrived.

Snyder with a gun in his hands, although she claims that he tapped on her door with something "metallic," which she thought might be a gun through the glass door. It is undisputed that Mr. Snyder did actually have a gun on him that day, but it is disputed whether he ever displayed it during this initial exchange. Plaintiff did not open her door or go outside to talk to Mr. Snyder during this time.

Mr. Snyder remained on plaintiff's property[6] and made a cellular telephone call, which he claims was made to Ms. McCunn's father in an effort to determine Ms. McCunn's location.[7] While Mr. Snyder was on the telephone, plaintiff came outside of her residence with a gun, pointed it at Mr. Snyder and told him to get off her property. Plaintiff was screaming and cursing at Mr. Snyder. Plaintiff decided not to shoot Mr. Snyder because he was not holding a weapon when she came out of the house, and "she did not want more problems with involuntary manslaughter." Mr. Snyder quickly left the property and drove to another location nearby, the intersection of 183rd and Ridgeview. Police dispatch records indicate that he called at 6:50:27 and informed the dispatcher that the woman at that residence had just pointed a gun at him. He also told the dispatcher that he would remain at that location until the police arrived. When the police showed up, Mr. Snyder spoke with them, and then went back to plaintiff's residence, watching

---

[6] Plaintiff claims that defendant remained on her "stoop" but defendant claims that he went out to her driveway. Mr. Snyder's precise location is irrelevant to the resolution of the pending motions.

[7] Mr. Snyder states that he did not leave immediately because he questioned whether plaintiff might be covering for Ms. McCunn, given plaintiff's behavior at the door.

the officers attempt to communicate with plaintiff.[8]  Plaintiff spoke with the police briefly

out on her lawn, demanding that the police arrest Mr. Snyder.  Plaintiff states that she

told the police her name, making it clear that she was not Ms. McCunn.[9]  The police

asked her to put away the dog that she had taken outside with her.  According to plaintiff,

the police threatened to arrest her if she did not put the dog away.  She then turned and

ran into her home.[10]  The police attempted to get plaintiff to come back outside, talking to

her over the telephone.

 According to plaintiff, Mr. Snyder maliciously informed the Johnson County

police that she was Ms. McCunn and that this led to the police to remain outside her

home for approximately two hours, demanding that she come out and subject herself to

arrest.[11]  Plaintiff claims that the police pointed assault rifles towards her home over the

hood of police vehicles.[12]  It is undisputed that the police blocked the roadway.[13]

---

[8] Plaintiff claims that Mr. Snyder appeared back on her property and remained on her
property until the police began to leave quite some time later.  Mr. Snyder claims that he
left near 7 pm to give a statement to a Deputy Thrasher with the Johnson County
Sheriff's office (given nearby shortly after 7 pm).

[9] The police reports attached as exhibits state that plaintiff did not tell the police her name
when asked, but rather that she said they could look in the mail box if they wanted to
know her name.

[10] The police reports indicate that plaintiff stated that no one would be arresting her, and
that she then turned and ran into her house.  She claims that the officers chased her up to
her door in one memorandum filed with the Court.  The police reports do not contain any
indication that the police chased plaintiff, and plaintiff's affidavit does not indicate this
either.

[11] It is disputed whether the police threatened arrest or demanded that plaintiff subject
herself to arrest.

[12] It is disputed whether the police aimed guns at plaintiff.  However, plaintiff presented
affidavit evidence stating that the police pointed assault rifles over the hoods of their

Plaintiff claims that these circumstances created a "siege." She states that the police informed her after some period of time that they knew she was not Ms. McCunn, but that she still needed to come outside and subject herself to arrest. Plaintiff never was arrested. After approximately two hours, the police gave up attempting to get plaintiff to leave her residence, and they vacated the premises.

Plaintiff initially filed suit in state court, in the District Court of Johnson County, Kansas. The case was assigned to "Division 7." Plaintiff named "Shane's Bail Bonds" and "Roy Delbert Snyder, Jr" as defendants. Aarecorp and Mr. Shane Rolf responded, asserting defenses based upon plaintiff's failure to properly name them as defendants. Plaintiff sought to amend her complaint to add these defendants. Although plaintiff claims that she was not permitted to amend, it appears from the state court's orders that Aarecorp and Mr. Rolf became defendants in the state court proceeding. The state court sanctioned plaintiff for discovery violations and plaintiff failed to pay the sanctions. The court thus dismissed her action without prejudice on August 18th, 2009, ordering as a condition to any re-filing that she first pay defendants $1,000. On August 21, 2009, plaintiff filed a "Notice of Appeal" with the state court, purporting to appeal the decisions of the state court assessing sanctions to the United States District Court for the District of Kansas. On September 17, 2009, plaintiff filed a Notice of Removal with the federal court, asserting federal question jurisdiction. Judge Melgren concluded that removal was

vehicles, and the Court thus proceeds on the assumption that there were weapons pointed at plaintiff's home.
[13] In the attached police reports, officers at the scene stated that the road was blocked out of concerns stemming from plaintiff's apparent possession of a gun and her agitated state.

improper, and remanded the matter to the Johnson County District Court. *See* doc. #52-12.

On February 18th, 2010, plaintiff filed the present complaint with this Court. She again named as defendants "Shane's Bail Bonds" and "Roy Delbert Snyder," failing to name Aarecorp, Mr. Rolf, the Johnson County Sheriff's Department or any individual officers.[14] On April 12th, 2010, defendants filed their motion to dismiss or, in the alternative, for summary judgment (doc. #12). Plaintiff filed numerous requests for extensions of time in which to respond. On June 18th, 2010, Magistrate Judge O'Hara issued an order staying discovery (doc. #28), explaining that the issues raised by defendants' motion did not seem to require any discovery. Judge O'Hara explained that plaintiff could file a response to the motion that included an affidavit under Fed.R.Civ.P. 56(f), requesting discovery in order to properly respond to the motion. Plaintiff did not file an affidavit as required by Fed.R.Civ.P 56(f), but on June 25th, plaintiff did file a motion for discovery to be permitted under that rule (doc. #32).

---

[14] Plaintiff had apparently notified the state court in August 2009 that she desired to add additional parties, including the Sheriff's Department and officers involved in the event. *See* doc. #52-12 ("Order Dismissing Notice of Appeal").

A.  Motion for Summary Judgment and Motion to Amend

Given their interrelated nature, the Court addresses the defendants' Motion to Dismiss or for Summary Judgment alongside plaintiff's Motion to Amend.

1.  Standards

a.  Motion for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the

court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

b. Motion to Amend

Plaintiff filed her initial complaint on February 18, 2010 (doc. #1). On April 12th, 2010, defendants filed their motion to dismiss or, in the alternative, for summary judgment (doc. #12). Plaintiff filed motions for extension of time in which to respond to the pending dispositive motion. On June 18, 2010, plaintiff filed a motion to amend her complaint, (doc. #29) attaching a copy of her proposed amended complaint. However,

plaintiff later sought time in which to make changes to her previously filed proposed amended complaint, and was granted until July 8th, 2010 to do so. Plaintiff timely filed her second proposed amended complaint. Because plaintiff did not seek to amend her complaint within the time provided for amendment as a matter of right, this Court must decide whether to grant her leave to amend. *See* Fed.R.Civ.P 15(a)(1). In making this determination, the Court looks to the last proposed amended complaint plaintiff filed (doc. #46).

The Court should freely grant leave to amend a pleading "when justice so requires." Fed.R.Civ.P. 15(a)(2). A district court, however, may dismiss a complaint without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend her complaint. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). *See also Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 178, 1288 (10th Cir. 2008). A proposed amendment is futile if it would be subject to dismissal. *Anderson*, 521 F.3d at 1288. Ultimately, whether to grant leave to amend a compliant lies within the discretion of the district court. *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006).

2. Analysis

In their Motion to Dismiss or, in the Alternative, for Summary Judgment, defendants assert that plaintiff did not effectively serve process upon either Mr. Rolf or Aarecorp, as they were never properly made parties to the action. Defendants also argue

that plaintiff should not be permitted to amend to add them as parties since plaintiff

cannot satisfy the requirements for relation-back under Fed.R.Civ.P. 15(c). Plaintiff has

sought to add Mr. Rolf and Aarecorp as defendants in her proposed amended complaint

(docs. #29 and #46). The Court agrees that Mr. Rolf and Aarecorp have not been made

parties to the present action, and thus considers first whether to permit plaintiff to amend

her complaint to allege claims against them. The Court then turns to address whether

plaintiff should be permitted to amend her complaint to add Johnson County and various

individual officers as defendants. Finally, the Court considers plaintiff's claims against

Mr. Snyder and whether to grant defendants' Motion to Dismiss or, in the Alternative, for

Summary Judgment (doc. #12).

a.  Claims Against Shane Rolf and Aarecorp Bonding, LP

In her original federal court complaint filed February 18th, 2010, plaintiff named

"Shane's Bail Bonds" and "Roy Delbert Snyder" as defendants. However, plaintiff erred

in naming "Shane's Bail Bonds" as a defendant, since the proper name of the entity is

Aarecorp Bonding, LP. In her proposed amended complaint, plaintiff seeks to substitute

Aarecorp Bonding, LP for Shane's Bail Bonds and to add Shane L. Rolf as a defendant.

However, plaintiff's claims against Aarecorp, Mr. Snyder, and Mr. Rolf are now barred

by a one or two year statute of limitations and cannot be saved by the Kansas Savings

Statute,[15] as plaintiff filed her complaint in federal court at exactly six months and did not

---

[15] The Kansas Savings Statute permits plaintiffs to re-file actions originally filed in a
timely manner but dismissed for some reason other than "upon the merits." K.S.A. § 60-
518.

attempt to amend to add these parties until June 18th, 2010, well beyond the six-month cut off. *See Wandrey v. Serv. Business Forms, Inc*., 762 F.Supp. 299, 301-02 (D. Kan 1991).

Plaintiff's claims under 28 U.S.C. § 1983 are subject to a two year statute of limitations, which ran on July 2, 2008. *See Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (explaining that the statute of limitations for claims under § 1983 "is drawn from the personal-injury statute of the state in which the federal district court sits") and K.S.A. § 60-513(a)(4) ("The following actions shall be brought within two years…[a]n action for injury to the rights of another, not arising on contract, and not herein enumerated."). *See also Hamilton v. City of Overland Park*, 730 F.2d 613, 614 (10th Cir. 1984). Plaintiff's state law claims are likewise barred by the statue of limitations. Plaintiff's claims for negligence, the tort of outrage, intentional infliction of emotional distress, trespass, fraud, and invasion of privacy are subject to a two-year statute of limitations. *See K.S.A. 60-513(a)(1)(3) and (4).* Plaintiff's claim for assault is barred by a one-year statute of limitations, and to the extent plaintiff seeks to allege a state law claim for false imprisonment, it would likewise be subject to the one-year limitations period. *See* K.S.A. 60-514(b) ("The following actions should be brought within one year…[a]n action for assault, battery, malicious prosecution, or false imprisonment."). Finally, plaintiff's claim for violation of Article 15 of the Kansas Constitution would be barred by a two-year statute of limitations. *See* K.S.A. 60-513(a)(4) ("The following actions shall be brought within two years…[a]n action for injury to the rights of another, not arising on contract and not herein enumerated").

As plaintiff's claims arising from the events on July 2, 2006 are therefore now barred by the statue of limitations, plaintiff must satisfy the requirements of Fed.R.Civ.P 15(c) in order for her proposed amendment to relate-back to the filing of the initial petition. *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004). Rule 15(c) provides as follows:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Plaintiff expands upon her allegations in the proposed amended complaints, but the Court concludes that her claims against Aarecorp, Mr. Rolf and Mr. Snyder primarily arose out of the same occurrence as alleged in the original federal court complaint: the conduct of Mr. Snyder on the evening of July 2, 2006. [16] Thus, these proposed amendments will

---

[16] In her proposed amended complaint, plaintiff did seemingly attempt to set forth a couple of new claims not specifically arising from Mr. Snyder's conduct on July 2, 2006. In particular, plaintiff now asserts that Aarecorp, Mr. Rolf *or* Mr. Snyder threatened her with harm after she filed the complaint. She also appears to set forth a claim based upon the defendants' refusal to enter into a settlement agreement with her. Lastly, she alleges in a conclusory manner that they "specifically acted in a continuing pattern of misconduct directed towards Plaintiff." (doc. #46 at 8). Defendants are not obligated to settle with plaintiff, and she therefore cannot establish any claim against them on this basis. Moreover, plaintiff's allegation of "continuing" misconduct is factually unfounded and thus fails to satisfy even the most liberal pleading standards. Finally, plaintiff's

relate back only if Aarecorp and Mr. Rolf (1) received notice of the action and would not be prejudiced in maintaining a defense, and (2) knew or should have known that the action would have been brought against them but for plaintiff's mistake "concerning the identity of the proper party." Defendants concede that Aarecorp and Mr. Rolf received notice of the action. Defendants also do not contend that they would be prejudiced by amendment. However, they assert that plaintiff's claims cannot relate back under Fed.R.Civ.P. 15(c) because plaintiff was not mistaken about the identity of the proper party.

When plaintiff initially filed suit in state court on July 2nd, 2008, she likewise named "Shane's Bail Bonds" and "Roy Delbert Snyder" as defendants. *See* doc. #13-2 (state court petition). Aarecorp nonetheless responded to the action, asserting improper service as a defense, and explaining that Aarecorp sometimes operates under the trade name "Shane's Bail Bonds." *See* doc. #13-3 (answer). Plaintiff then sought to amend her state court petition to name Aarecorp instead and to add Mr. Rolf as a defendant, *see* doc. #52-4 (motion to amend), and she filed an amended petition with the court, on February

---

allegation that Aarecorp, Mr. Rolf or Mr. Snyder threatened her with harm is likewise insufficient to survive the present dispositive motion. The only evidence plaintiff provides for this claim is her own assertion that she received a telephone call not long after having filed suit, and that the person on the other end of the line threatened to kill her (doc. #52-1 at p. 11) (plaintiff's affidavit). As even plaintiff described it in her affidavit, "*someone*" called her and threatened to kill her a few days after filing the action. (doc. #52-1 at p. 14) (plaintiff's affidavit). Plaintiff thus lacks any evidence to connect any of these entities or persons with the call she received. Moreover, plaintiff does not even attempt to set forth any actual "claim" based upon this allegation. Thus, even if these claims in the proposed second amended complaint did not arise out of the occurrence on July 2nd, 2006 and are not barred by the statute of limitations, the Court finds that amendment to add these claims would be futile. *Anderson*, 521 F.3d at 1288.

20, 2009.  *See* doc. #52-5 (amended petition).  It appears from the state court documents provided as exhibits that Mr. Rolf and Aarecorp were made defendants, alongside Mr. Snyder.[17]  As previously explained, when plaintiff filed suit in federal court in February 2010, she again named "Shane's Bail Bonds" as a defendant, despite her knowledge of the entity's proper name and role in the event giving rise to her claims.  According to defendants, she therefore cannot be considered to have made a "mistake concerning the identity of the proper party" under Fed.R.Civ.P. 15(c), and her amended complaint therefore could not relate back to the filing of the original state court petition.

The Supreme Court has recently clarified the meaning of a "mistake concerning the identity of the proper party" under Rule 15(c).  In *Krupski v. Costa Crociere S.p.A.*, 130 S.Ct. 2485 (June 7th, 2010), the Court explained that the appropriate inquiry is not the plaintiff's knowledge concerning the identity of the proper defendant, but rather the knowledge of the party to be brought into the action—whether the party to be brought in "knew or should have known that it would have been named as a defendant but for an error."  *Id*. at 2493.  In *Krupski*, the plaintiff had "constructive knowledge" of the existence of the proper entity before the limitations period ran, and the Eleventh Circuit therefore found that the plaintiff could not have made a "mistake" concerning the party's identity.  However, the Supreme Court pointed out that a plaintiff could know of a

---

[17] Plaintiff claims that she was not permitted to amend her state court petition, but the documents she filed as exhibits indicate that Aarecorp and Mr. Rolf were made defendants, as they are subsequently listed in the case captions and described as defendants in court documents.  *See, e.g.,* doc. #52-12 (order of dismissal without prejudice, dated August 18th, 2009) and #52-18 (journal entry of August 10th, 2009).

potential party's existence and still make a mistake concerning its identity. The Court

concluded that Rule 15(c)(1)(C)(ii) may still be satisfied where the plaintiff knew of a

prospective defendant's identity but nonetheless "harbor[ed] a misunderstanding about

his status or role in the events giving rise to the claim at issue," and mistakenly sued a

different defendant "based on that misimpression." *Id.* at 2494. However, the Court

pointed out that "making a deliberate choice to sue one party instead of another while

fully understanding the factual and legal differences between the two parties is the

antithesis of making a mistake concerning the proper party's identity." *Id.* Thus, where

"the original complaint and the plaintiff's conduct compel the conclusion that the failure

to name the prospective defendant in the original complaint was the result of a fully

informed decision as opposed to a mistake concerning the proper party's identity, the

requirements of Rule 15(c)(1)(C)(ii) are not met." *Id.* at 2496.

Here, the record shows that plaintiff named "Shane's Bail Bonds" rather than

Aarecorp despite having full knowledge of the existence of Aarecorp and its role in the

events giving rise to plaintiff's claims. Similarly, plaintiff failed to name Mr. Rolf as a

defendant even though she had been made aware in the state court litigation of his

existence and potential liability. In response to defendants' arguments, plaintiff states

that she believed she had to name the parties in the same manner as she did in the state

court action to take advantage of the Kansas Savings Statute. Plaintiff may have made a

legal error concerning the application of the Kansas Savings Statute and Rule 15(c), but

she cannot be said to have made a mistake about the identities of Aarecorp or Mr. Rolf

when she deliberately chose to instead name "Shane's Bail Bonds" in her federal court complaint.[18]  *See Wandry,* 762 F.Supp. at 302 ("where the plaintiff knows the identity of the proper parties within the statutory period, the plaintiff's failure to name these parties represents only a tactical mistake, and there is no mistake in identity of which the defendant might have knowledge").  Thus, her claims against Aarecorp and Mr. Rolf would not "relate back" to the original filing, and she is therefore barred by the statute of limitations with regard to her claims arising from the occurrence on July 2, 2006.[19]  The Court therefore finds that it would be futile to permit plaintiff to amend her complaint to add Aarecorp and Mr. Rolf as parties, and movants Aarecorp and Mr. Rolf are entitled to dismissal of any of plaintiff's claims against them.  The Court turns to address whether plaintiff's claims against Mr. Snyder survive defendants' motion to dismiss or, in the alternative, for summary judgment.

b.  Claims Against Johnson County and Individual Officers

        In her proposed amended complaint, plaintiff also seeks to add as defendants Johnson County, Kansas, Lt. Casey Wilder, Master Sgt. Phillip Ward, Deputy Johnny Thrasher, Deputy Dan Dierks, Deputy Larry Shoop, Deputy Darrel Reece, Major Larry

_____

[18] The Court also notes that plaintiff is no stranger to the technicalities of litigating claims in either state or federal court.

[19] Plaintiff requests that this court "use its discretionary latitude to prevent injustice" if in fact she erred in naming Shane's Bail Bonds rather than Aarecorp and Mr. Rolf.  *See* doc. #38 at 53.  However, this Court has no discretion to permit the plaintiff to pursue an action otherwise barred by the statute of limitations.

Jones, Officer Bill Walker, and Sheriff Frank Denning. *See* doc. #46. In her proposed amended complaint, plaintiff alleges various state law claims against these proposed defendants, as well as claims under 28 U.S.C. § 1983. The vast majority of plaintiff's claims against these proposed defendants arise from the events on July 2nd, 2006 and are barred by the statute of limitations. As previously explained, plaintiff's claims under 28 U.S.C. § 1983 are subject to a two year statute of limitations, which ran on July 2, 2008. *See Hamilton*, 730 F.2d at 614. Plaintiff filed her complaint on that date in the state court as against defendant Snyder and "Shane's Bail Bonds," but did not seek to add Johnson County and the individual officers as defendants until June, 2010, pursuant to her federal court action. Thus, plaintiff would have to satisfy the relation-back provision in Fed.R.Civ.P. 15(c) in order to assert these federal claims against the proposed defendants.

Plaintiff does not appear to allege any state law negligence claim against the proposed defendants,[20] but to the extent that she sought to do so, her claims would likewise be barred by a two-year statute of limitations. *See Lyons v. Kyner*, 367 Fed.App'x 878, 882 (10th Cir. Feb. 10, 2010) (explaining that a two-year statute of limitations applies to negligence actions under Kansas law, which the federal court must apply). Plaintiff also appears not to have alleged any claims against these proposed defendants for trespass, fraud or false imprisonment, but if her amended complaint could be read as alleging such claims, they would likewise be barred. *See* K.S.A. § 60-513(a)(1) and (a)(3) and § 514(b). Finally, plaintiff's claim against these proposed

---

[20] Plaintiff does state, however, that the proposed defendants committed a "gross dereliction of duty."

defendants for violation of Article 15 of the Kansas Constitution would be barred by a two-year statute of limitations. *See* K.S.A. 60-513(a)(4). Thus, plaintiff would also have to satisfy the relation-back provision in Fed.R.Civ.P. 15(c) in order to assert any of her potential state law claims based on the events of July 2, 2006 against the proposed defendants.

Plaintiff could not satisfy the requirements set forth in Fed.R.Civ.P. 15(c) for relation-back of amendments with respect to these time-barred claims. First, there is no reason to believe that the proposed defendants have even received notification of plaintiff's action, and plaintiff certainly did not make any mistake concerning their identities, as she has known all along of the role of Johnson County and its employees in the events that transpired on July 2nd, 2006. Plaintiff here simply seeks to add several more defendants well beyond the expiration of the statute of limitations, and there is simply no authority for her to do so with respect to any of these claims now barred by the statute of limitations. Thus, it would be futile to permit plaintiff to amend her complaint to allege these claims, and the Court denies her request to do so.

However, plaintiff also attempts to assert claims against Johnson County and individual officers that seem to extend in time and scope beyond the events of July 2nd. These claims therefore might not be barred by the statute of limitations. The Court thus turns to assess whether plaintiff should be permitted to amend her complaint to assert any of these claims against the proposed defendants.

First, plaintiff alleges that Johnson County and Sheriff Frank Denning conspired and supported the wrongful activities of Mr. Snyder, Mr. Rolf and Aarecorp by permitting them to operate in Johnson County as a bonding company under some sort of "special arrangement." Plaintiff contends that Aarecorp is improperly operating as a "pocket bonding" entity, since the Kansas Attorney General issued an opinion in 1987 stating that only an individual may engage in "pocket bonding." *See* Kan. Atty. Gen. Op. No. 87-11, 1987 WL 290408 (Jan. 20, 1987). She also claims that Shane's Bail Bonds is not a licensed bonding company. Plaintiff appears to be attempting to allege this as a separate claim from those concerning the events on July 2nd, 2006. The Court concludes that this claim actually arises out of the same "conduct, transaction, or occurrence" set forth in plaintiff's complaint, *see* Fed.R.Civ.P. 15(c), and is therefore barred from asserting this claim because it does not relate back to the filing of the initial federal court complaint. *See* K.S.A. 60-513(a)(4) and Fed.R.Civ.P. 15(c). The Court also notes that plaintiff, a private individual, has not demonstrated that she has standing to assert a claim concerning the Aarecorp's licensure, or the legality of it operating without a state-issued license. *See Wilderness Soc'y v. Kane County*, 581 F.3d 1198, 1232 (10th Cir. 2009) (citing *Linda R.S. v. Richard D*., 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

Second, plaintiff claims that these proposed defendants caused her a "loss of privacy," based upon the fact that her "life is now spread open again" because of the

lawsuits she has filed. It is unclear whether plaintiff is attempting to set forth an invasion of privacy claim, or merely alleging a loss of privacy as one element of harm. Plaintiff's personal decision to sue defendants cannot form the basis for an intrusion upon seclusion type of invasion of privacy claim, as plaintiff cannot prove that defendants intentionally interfered with her seclusion or pried into her private affairs. *See Moore v. R.Z. Sims Chevrolet-Subaru, Inc.*, 738 P.2d 852, 856-57 (Kan. 1987).

Third, plaintiff alleges that Johnson County had a duty to inform plaintiff of the "conflict of interest" it had in plaintiff's civil suit filed in state court. Plaintiff asserts that Johnson County should have "recused" itself from adjudicating the state court case she filed, because Johnson County also licensed Shane's Bail Bonds or Aarecorp[21] and thus "intended to pass judgment on an entity doing business solely at their discretion and with their cooperation and financing." Specifically, plaintiff claims that Division 6 licenses Aarecorp and, since she litigated in related Division 7, Johnson County had a conflict of interest. Plaintiff also claims that Johnson County took retaliatory action against her in assessing sanctions against her, to harm her and prevent her from discovering the relationship between Johnson County and Shane's Bail Bonds. Apparently to support this claim, plaintiff states:

> "Defendant Johnson County, Division 7, refused to allow Plaintiff to schedule hearings and sanctioned her for discovery shortcomings when Division 7 stated that Defendants Shane's Bail Bonds and Snyder did not have to provide ANY discovery responses requested by Plaintiff until Plaintiff had provided them ALL the discovery

---

[21] Specifically, she asserts that "Division 6" of Johnson County licensed Aarecorp. She provides no authority for this contention, claiming instead that Johnson County has refused to provide her any licensure information.

that Defendants had requested and Defendants deemed it complete.  Division 7 refused Plaintiff's requests for more time to pay sanctions or acknowledge her errors clearly such as the unknown subpoena error that deserved such sanctions or for enough time to be ready for hearings.  Division 7 also allowed a pattern of misconduct by Defendants [sic] counsel in contacting Plaintiff's friends and employers so as to worsen her position and label her dangerous."

Plaintiff has not specified any federal or state law claim she might wish to assert for this allegedly unfair treatment in the state courts.  However, as plaintiff states that she is asserting alleged violations of her Fourth, Fifth and Fourteenth Amendment rights as against the proposed defendants, the Court presumes that plaintiff seeks to assert some sort of due process constitutional claim.  First, Johnson County is not the appropriate entity to sue if plaintiff seeks to allege claims of unfair treatment in the state courts.[22] Second, plaintiff has provided no evidence to support the proposition that *any* division of the Johnson County District Courts licenses bail bond companies, and plaintiff herself chose to bring an action in the Johnson County District Courts initially.  Third, plaintiff's allegations smack of an attempt to get this Court to review various state court decisions.  Under the *Rooker-Feldman* doctrine,[23] "'a district court cannot entertain constitutional claims attacking a state-court judgment, even if the state court did not pass directly on those claims, when the constitutional attack is inextricably intertwined with the state

_____

[22] Although plaintiff's amended complaint does not make this allegation clearly, plaintiff does argue in her response to defendants' motion that she "should have had a free, disinterested, impartial and independent judge" at the state level.  *See* doc. #38 at p. 57. She also claims that she was denied a fair trial.

[23] The *Rooker-Feldman* doctrine "precludes inferior federal courts from reviewing the final decisions of state tribunals."  *Dauwe v. Miller*, 364 Fed. App'x 435, 437 (10th Cir. Feb. 3, 2010).

court's judgment.'" *Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 286 n. 1, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). To the extent plaintiff seeks to allege constitutional claims based upon these actions of the state courts, the claims are inextricably intertwined with the state court judgments. *See Dauwe v. Miller*, 364 Fed.App'x 435, 437 (10th Cir. Feb. 3, 2010) (finding *Rooker-Feldman* applicable to various claims concerning treatment in the state courts, including a claim that the judge should have recused and that the state courts wrongly made certain decisions). Consequently, this Court would lack jurisdiction over these claims, and plaintiff therefore should not be permitted to amend her pleadings to bring in the proposed defendants to allege these new claims, as amendment would be futile.

Fourth, plaintiff alleges that Johnson County has engaged "in a pattern of surveillance, constant contact, fear producing, and ticket writing and constant prosecution on baseless charges against Plaintiff in an attempt to frighten her and induce her to leave the area permanently…" She claims that Johnson County has retaliated against her in an attempt to prevent her from prosecuting her civil action, by repeatedly giving her traffic citations (which she claims she did not receive before instituting this action). In support of this claim, plaintiff attached court dockets for the Johnson County, Kansas District Court, showing plaintiff has had a few tickets for failure to yield, speeding, and driving on a suspended license from 2007-2009.[24] On August 5, 2010, plaintiff submitted

---

[24] Plaintiff claims she has had three tickets in four years. *See* doc. #65.

another exhibit consisting of the docket of the Johnson County courts, indicating that plaintiff has been found "not guilty" of one of the failure to yield tickets. *See* doc. #65. The Court concludes that plaintiff has failed to present any evidence indicating retaliation.

The following elements must be demonstrated to set forth a First Amendment retaliation claim "where the governmental defendant is not the plaintiff's employer nor a party to a contract with the plaintiff": "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendants' actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendants' adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 212 (10th Cir. 2000)). Plaintiff has put forth no evidence to indicate that the tickets she received were given in response to her filing of a civil rights action. For example, plaintiff did not present to the Court her driving record, to demonstrate her alleged lack of tickets prior to the 2006 incident. To date, plaintiff has only presented evidence that she has been found "not guilty" of one of the traffic violations, and this is utterly insufficient to state any claim for retaliation. *See Diaz*, 289 F.3d at 675 and *Shero*, 510 F.3d at 1203. Moreover, the Court finds the claim of retaliation to be frivolous, as plaintiff apparently did not even attempt to add Johnson County or any of the individual officers as defendants in her action until August 2009, immediately before dismissal of the action in

the state court, and they still have not been made defendants. Plaintiff has not even presented evidence indicating that Johnson County had notice at the time she received the tickets that plaintiff had filed a civil rights action based upon the events of July 2nd, 2006.

Thus, the Court concludes that each of these four claims are subject to dismissal. Consequently, it would be futile to permit plaintiff to amend her complaint to add these claims against these new proposed defendants, and the Court therefore denies her request to do so. *See Anderson,* 521 F.3d at 1288.

c. Claims Against Roy Snyder

The Kansas Savings Statute permitted plaintiff to re-file her action as against defendant Snyder, since the state court dismissed her claims without prejudice, and plaintiff re-filed her action within six months of the dismissal. *See* K.S.A. § 60-518. However, defendants in the motion to dismiss or, for summary judgment, set forth several reasons why plaintiff must not be permitted to go forward on her claims against Mr. Snyder. Specifically, they allege the following: (1) plaintiff failed to comply with the conditions imposed by the state court upon the re-filing of plaintiff's complaint; (2) plaintiff's state law claims are barred by a one-year statute of limitations; (3) plaintiff cannot assert claims under 18 U.S.C. § 1983 because she cannot demonstrate that Mr. Snyder acted under color of state law; (5) plaintiff has not sufficiently alleged or proven her state law claims for the tort of outrage, invasion of privacy, or trespass to real property; and (6) plaintiff has failed to state any claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). Defendant Snyder also filed a Motion to Dismiss pursuant

to 28 U.S.C. § 1915(e), claiming that plaintiff's complaint is frivolous and that plaintiff filed and maintained the action out of malice. The Court concludes that Mr. Snyder did not act under color of state law on the evening of July 2nd, 2006. Consequently, plaintiff alleges no valid federal claims against any defendants, and the Court declines to exercise supplemental jurisdiction over any of her remaining state law claims.

i. Compliance with Condition to Re-Filing

On August 18th, 2009, Judge Hauber issued an Order of Dismissal Without Prejudice, requiring that plaintiff pay defendants $1,000 before re-filing the action, due to plaintiff's discovery misconduct (doc. #52-12). On February 18th, 2010, plaintiff filed the present action in federal court, attaching to the complaint a photocopy of a money order issued to defendants for the sum of $1,000 (doc. #1). The money order was dated February 18th as well. Defendants contend, however, that plaintiff did not timely pay the money owed and that the state court conditional dismissal thus became a final dismissal with prejudice on February 18th. Specifically, defendants argue that plaintiff's mailing of the $1,000 on the same day as the filing was not sufficient because the payment was made when received, not when mailed. According to defendants, this Court thus lacks personal jurisdiction over defendants, or is barred from deciding the merits of plaintiff's claims by the doctrine of res judicata. They also assert that plaintiff cannot avail herself of the Kansas Savings Statute, K.S.A. § 60-518, since her dismissal became one with prejudice, and that her action is consequently time-barred.

This Court may enter an order to dismiss with prejudice when a plaintiff fails to comply with conditions set forth for re-filing an action in an entry of dismissal without prejudice. *See Smith v. Dollar General Corp.*, 2007 WL 458265, at *1 (D. Kan. Jan. 11, 2007) (converting a prior dismissal without prejudice to a dismissal with prejudice where plaintiff failed to comply with conditions for re-filing, including payment of fees and expenses). However, the Court does not agree that plaintiff failed to meet the condition imposed upon her re-filing of this action. She mailed to defendants the $1,000 sanction imposed by the state court for discovery abuses prior to filing her federal court complaint, evidenced by the fact that she attached a receipt to the complaint. Moreover, defendants concede she mailed them payment on February 18th. Defendants have cited to no authority for the proposition that a plaintiff's payment *of court ordered sanctions* occurs only when the payment is received by the defense, instead relying on inapplicable case law concerning contract obligations. Moreover, a plaintiff's failure to comply with conditions imposed by a state court on re-filing would not deprive this court of its jurisdiction. Thus, the Court is not persuaded by defendants' initial argument.

ii. State Actor

To assert a valid claim against Mr. Snyder under § 1983, plaintiff must demonstrate that Mr. Snyder acted under color of state law, which is determined using the two-part test set forth in *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982):

First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible…Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id*. at 937, 102 S.Ct. at 2753-54.

The first element of *Lugar* is satisfied, as "a bondsman has both a statutory and common law right to arrest his fugitive" under Kansas law.  *See Bailey v. Kenney*, 791 F.Supp. 1511, 1521-22 (D. Kan. 1992).  Thus, the only question is whether Mr. Snyder might fairly be said to have been a "state actor."  This requirement will be satisfied where the individual "'has acted together with or has obtained significant aid from state officials.'"  *Id*. (quoting *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2754).  An individual will act under color of state law if he "is a willful participant in joint action with the State or its agents."  *Id*. (quoting *Dennis v. Sparks*, 449 U.S. 24, 27-28, 101 S.Ct.t 183, 186, 66 L.Ed.2d 185 (1980)).

This Court has found a bail bondsman to be a "state actor" where the police provided significant assistance in the plaintiff's detention.  *Id*. at 1523.  For example, in *Bailey v. Kenney*, the court noted that the bail bondsman and officers "used their show of authority in an attempt to bring plaintiff to the door; they jointly forced their entry into the house with guns drawn; they pointed their weapons at plaintiff when he appeared; and they jointly restrained plaintiff of his freedom while questioning him."  *Id*.  Similarly, in *Jackson v. Pantazes*, the Fourth Circuit found that a bondsman acted under color of state

law where he enlisted the police's assistance in forcing entry into a home and the officer "lent his authority to gain entrance to the house; helped drag the mother of the fugitive from the doorway; stood by while the bondsman used force against the mother; and informed the mother that the bondsman could 'do whatever he wants.'" *Bailey*, 791 F.Supp. at 1522 (citing *Jackson*, 810 F.2d 426, 429 (4th Cir. 1987)). As the Fifth Circuit has explained, "[t]he majority of federal courts that have addressed the state action issue in the context of bail bondsmen have based their decisions on whether the bondsmen enlisted the assistance of law enforcement officers in arresting their principals." *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200, 204 (5th Cir. 1996). Thus, the Fifth Circuit concluded in *Landry* that a bail bondsman does not act under color of state law where he does not purport to act "pursuant to [a] warrant" nor "enlists the assistance of law enforcement officials in executing the warrant." *Id.* at 204-05. *See also Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 553 (9th Cir. 1974) (concluding that a bail bondsman was not a state actor where he did not act in conformity with state law and did not enlist the assistance of law enforcement). The exception is the Fourth Circuit, which has concluded that bail bondsmen are state actors based upon the "relationship between bail bondsman and the state's criminal court system." *Landry*, 75 F.3d at 204 (citing *Jackson*, 810 F.2d at 430).[25]

---

[25] This Court is persuaded by the reasoning of those that have rejected the Fourth Circuit's position, as "bondsmen are private citizens who interact with the state in the course of pursuing their private interests" and "[t]heir conduct is therefore not attributable to the state." *Dean v. Olibas*, 129 F.3d 1001, 1006, n. 4 (8th Cir. 1997). The Tenth Circuit has also rejected this notion in the context of a bail bondsman's search. *United*

Plaintiff's federal claims against Mr. Snyder (for violations of the Fourth, Fifth, and Fourteenth Amendments) are based upon her allegation that she was wrongfully detained or seized.[26]  Plaintiff claims that Mr. Snyder acted under color of state law because he acted jointly with the officers who had "seized" her outside of her home.[27] According to plaintiff, Mr. Snyder informed the officers when they arrived that plaintiff was the Ms. McCunn he had been seeking to arrest, and then remained outside of her home while the officers talked to plaintiff outside and while the officers subsequently blocked the roadway, pointed weapons at her home, and threatened to arrest her.[28]

---

*States v. Poe*, 556 F.3d 1113, 1124 (10th Cir. 2009), *cert. denied*, 130 S.Ct. 395, 175 L.Ed.2d 268 (Oct. 13, 2009) ("These bounty hunters were hired to apprehend Poe by the bail bonds company, which was responsible for the bond it posted on Poe's behalf.  Poe's argument that law enforcement and the bail bonds industry have a "symbiotic relationship" is unpersuasive.  We do not inquire if police benefitted from the private conduct, but if the bounty hunters had a "legitimate, independent motivation" to conduct the search…Because the bounty hunters did not intend to assist law enforcement, they are not state actors…").  The Court thus rejects plaintiff's claim that Mr. Snyder was a "state actor" because of a relationship between the government and Aarecorp.

[26] Plaintiff claims that Mr. Snyder "demanded and received substantial state cooperation, support, and direction in the search, seizure, and siege of Plaintiff at Plaintiff's residence."  *See* doc. #38 at 23.  As discussed below, there is no indication in the record that Mr. Snyder sought the assistance of the police, and plaintiff provides no evidence to support this baseless assertion.  Moreover, while plaintiff claims the defendants and proposed defendants engaged in a wrongful "search," there is no factual evidence to support this allegation.  Neither Mr. Snyder nor the police ever gained entry into her home.

[27] In her response to the defendants' motion, plaintiff also tried to claim that Mr. Snyder acted under color of state law by analogizing the situation to one where a state agent assists a creditor in securing property.  She claims that she herself was being taken as property for another's bond or indebtedness, to prevent Aarecorp from having to forfeit their bond on Ms. McCunn.  The Court is not persuaded by this analogy.

[28] Mr. Snyder disputes that he remained outside of her home for a considerable length of time after the police arrived, but plaintiff provided evidence in the form of her affidavit, asserting that Mr. Snyder remained on her property until the police began to leave.  The Court therefore assumes that Mr. Snyder remained on the property.

However, Mr. Snyder did not seek the assistance of the police, as in *Bailey* or *Jackson v. Pantazes*. *See also Landry v. A-Able Bonding, Inc*., 75 F.3d 200, 204 (5th Cir. 1996) ("The majority of federal courts that have addressed the state action issue in the context of bail bondsmen have based their decisions on whether the bondsmen enlisted the assistance of law enforcement officers in arresting their principals"). Rather, plaintiff chose to call the police herself and seek their assistance during the initial encounter with Mr. Snyder at her doorstep. Mr. Snyder never arrested plaintiff, a "traditional government function," *Dean v. Olibas*, 129 F.3d at 1006,[29] but rather acted as a private citizen "in the course of pursuing [his] private interests."[30] *See id.* at 1006, n. 4. After plaintiff threatened him with a weapon, Mr. Snyder left her property and called 911. However, there is no evidence to indicate that Mr. Snyder then requested the assistance of the officers in detaining plaintiff. Rather, the telephone records show that Mr. Snyder merely informed the police that plaintiff had pulled a weapon on him and that he intended to remain at a certain location off her property until the officers arrived. The undisputed evidence is that he remained off of her property until the officers arrived, explained his version of the situation to the officers, and then returned to plaintiff's driveway for some disputed period of time while the officers spoke with plaintiff and later attempted to get

---

[29] Plaintiff claims that *Dean v. Olibas* is inapplicable because the plaintiff there was never actually arrested by the bail bondsman. Of course, Mr. Snyder never arrested plaintiff either.

[30] Plaintiff attempts to claim that Mr. Snyder was a "state actor" because he "routinely exercised state power" by "apprehending bondees who failed to appear properly." *See* doc. #38 at 29. However, plaintiff herself was not actually arrested, and she therefore cannot rely upon the argument that Mr. Snyder exercised a traditional government function on the evening of July 2nd.

her to come outside.  Plaintiff has not alleged any action by Mr. Snyder while the officers

were outside of her home.  For example, she does not provide any evidence to indicate

that Mr. Snyder actively participated in the "siege."[31]  Indeed, she admitted in her

deposition that she never clearly saw Mr. Snyder with a firearm,[32] and—more

importantly—plaintiff has never asserted that she saw him with a firearm after the police

showed up.  The only allegation plaintiff has made in this regard is that Mr. Snyder

misinformed the police of her identity and told them she was unstable, causing the police

to remain outside of her home for the next two hours, wrongfully believing her to be Ms.

McCunn.  First, plaintiff has absolutely no evidence to indicate that Mr. Snyder actually

told the police that plaintiff was Ms. McCunn, and Mr. Snyder asserts that he did not,

having since called Ms. McCunn's father and discovered that she had moved.  Plaintiff

bases this allegation upon her belief that the officers would not have remained outside of

her home for the next two hours unless Mr. Snyder had told them this.  *See, e.g*., doc. #38

at p. 14.  Of course, plaintiff ignores the fact that she herself had initially requested police

assistance and that she had just pulled a weapon on Mr. Snyder.  Indeed, evidence

plaintiff has submitted indicates that the police remained outside of her home in an effort

---

[31] Plaintiff claims that the police "offered significant state participation with numerous
vehicles, guns and assault rifles, road blocks, scare tactics, threats, and numerous
personnel."  *See* doc. #38 at 25.  However, there is no evidence to support the proposition
that the police were on plaintiff's property to assist Mr. Snyder in detaining her.  Indeed,
plaintiff was never actually arrested, nor did the officers ever enter her home.
[32] Plaintiff has explained that she did see Mr. Snyder tapping on her door with something
metallic, and thought it might be a gun, although she could not clearly see it through the
glass door.  However, she has not alleged that he had a firearm while on her property
with the police.  Mr. Snyder's potential brandishing of a weapon prior to the police
arriving is irrelevant to whether Mr. Snyder acted under color of state law.

to determine what had actually happened and whether *either* the bail bondsman or plaintiff should be charged with criminal conduct. However, even assuming that Mr. Snyder wrongfully told the police that plaintiff was Ms. McCunn and that she was unstable, plaintiff has not shown that Mr. Snyder acted jointly or in concert with the officers in "seizing" plaintiff.

The Tenth Circuit has explained that there is no state action "where a private party is simply reporting suspected criminal activity to state officials who then take whatever action they believe the facts warrant." *Lee v. Town of Estes Park*, 820 F.2d 1112, 1115 (10th Cir. 1987). *See also Carey v. Continental Airlines, Inc*., 823 F.2d 1402, 1404 (10th Cir. 1987) (no state action where private party complained to the police and the police consequently arrested the plaintiff). Likewise, the Eighth Circuit has noted that a bail bondsman does not become a state actor merely by filing an affidavit leading to the plaintiff's arrest. *Dean v. Olibas*, 129 F.3d at 1005-06. Even if Mr. Snyder did "fraudulently" inform the police that plaintiff was the individual he sought to arrest, after having discovered plaintiff's true identity, the Court finds that this would not be sufficient to find him a "state actor" under the principles set forth in *Lee*, *Carey*, and *Dean*. If Mr. Snyder did wrongly tell the officers that plaintiff was Ms. McCunn, and subject to his arrest, then he merely provided information to the officers, who then acted on their own volition in remaining outside of her property.[33] Unlike in *Bailey*, the bail

---

[33] Indeed, plaintiff has even described Mr. Snyder's conduct as "falsely reporting a crime to police." *See* doc. #38 at p. 17, 43 (Mr. Snyder "reported a crime deceitfully, maliciously, and recklessly and deliberately told JCSD McGregor was McCunn,

bondsman here did not act "in a concerted manner" with the police officers, nor is there any evidence that the officers acted under the bail bondsman's direction. Thus, the Court finds that Mr. Snyder did not act under color of state law, and plaintiff consequently cannot assert her claims under 18 U.S.C. § 1983 against him. It would be futile to permit plaintiff to file her amended complaint with regard to her claims against Mr. Snyder, since plaintiff in both the original and amended complaint merely seeks to assert claims pursuant to § 1983. Thus, the Court denies plaintiff's motion to amend and grants Mr. Snyder's motion to dismiss or, in the alternative, for summary judgment.

### iii. State Law Claims

Plaintiff also alleges various state law claims against Mr. Snyder in both her original complaint and her proposed amended complaint, including assault, false imprisonment, trespass, fraud, burglary, intentional infliction of emotional distress, negligence, invasion of privacy, and violations of her right to be free from unreasonable searches and seizures under Amendment 15 of the Kansas Constitution. Plaintiff also appears to assert claims based upon Mr. Snyder's alleged failure to file "forms" before attempting to arrest Ms. McCunn, and based upon her contention that the defendants are not properly licensed. In light of the fact that the Court must dismiss plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims against Mr. Snyder. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to

regardless of possible danger to McGregor…"). Of course, if plaintiff is referring to Mr. Snyder informing the police that plaintiff pointed a weapon at him, then plaintiff has no basis to claim that he "falsely" reported this, as she has admitted to doing so.

exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it had original jurisdiction). Accordingly, plaintiff's claims against Mr. Snyder under Kansas law are hereby dismissed.[34]

B.  Motion for Discovery

Plaintiff has filed a motion requesting discovery under Fed.R.Civ.P 56(f) in order to respond to defendants' summary judgment motion (doc. #32). Rule 56(f) "allows a court to stay or deny a summary judgment motion in order to then permit further discovery if the non-movant states by affidavit that it lacks facts necessary to oppose the motion." *Employers Reins. Corp. v. Newcap Ins. Co., Ltd*., 209 F. Supp. 2d 1184, 1187 n. 3 (D. Kan. 2002) (citing *Price v. Western Resources, Inc*., 232 F.3d 779, 783 (10th Cir. 2000)). The principal underlying Rule 56(f) is that 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Price*, 232 F.3d at 783 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). However, certain requirements must be met to invoke Rule 56(f). As the Tenth Circuit has explained:

> "A prerequisite to granting relief [pursuant to Rule 56(f)]…is an affidavit furnished by the nonmovant. Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be

---

[34] In light of this decision, the Court does not address the parties' arguments concerning the merits of this claim.

presented.  This includes identifying the probable facts not available and what steps have been taken to obtain these facts.  In this circuit, the nonmovant also must explain how additional time will enable him to rebut movant's allegations of no genuine issue of fact."

*Id*. (quoting *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (citations omitted)).

Plaintiff claims that she needs discovery in order to respond to the defendants' dispositive motion on the following matters: (1) the status of the licensure of Shane's Bail Bonds, Aarecorp, and Mr. Rolf by "Division 6" and information concerning how they are operating without any license; and (2) records of payments made to Mr. Snyder and information concerning other individuals he may have apprehended; and (3) financial documents on file with Johnson County "per regulation for sureties"; and (4) the "business arrangements" between the bonding company and Johnson County, apparently in furtherance of her claim that Aarecorp cannot lawfully write "pocket bail bonds" for criminal defendants without a license from the Kansas Department of Insurance.  Plaintiff also claims she needs more information concerning the arrangement between Aarecorp and Mr. Snyder, despite the fact that defendants have already provided her documentation showing that Aarecorp granted Mr. Snyder authority to apprehend Ms. McCunn on its behalf.

Plaintiff has not provided an affidavit, nor specified how she believes this information would be relevant to the arguments asserted in the defendants' dispositive motion.  For example, plaintiff provides no justification for why she believes she needs the defendants' financial information, and this information appears irrelevant to any

issues raised by the defendants in their motion. She also fails to explain the relevance of information concerning payments made to Mr. Snyder or other individuals he may have apprehended. Moreover, plaintiff has provided no authority for the proposition that "Division 6" of the Johnson County District Court even licenses bond companies, and she admits in her motion that "Division 6" has informed her they do not have any such license information. In any event, the statute of limitations bars plaintiff's claims against Aarecorp and Mr. Rolf, and none of the information plaintiff sought would have been relevant to the arguments raised by defendants concerning the federal claims asserted against Mr. Snyder personally. Thus, the Court denies plaintiff's motion. *See Price,* 232 F.3d at 783-84 (holding that where a party opposing summary judgment seeks additional discovery and fails to take advantage of Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate).

C. Motions for Sanctions

Rule 11 of the Federal Rules of Civil Procedure is violated when an attorney or an unrepresented party "present[s] to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper" for an improper purpose, such as to harass or needlessly increase the cost of litigation. Fed.R.Civ.P 11(b)(1). A person's action must be objectively reasonable in order to avoid sanctions under Rule 11. *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988). A litigant's pro se status may certainly be considered when determining whether to impose Rule 11 sanctions.

Fed.R.Civ.P. 11 advisory committee's notes to the 1983 amendments ("[T]he court has sufficient discretion to take account of the special circumstances that often arise in pro se situations"). However, Rule 11 "speaks of attorneys and parties in a single breath and applies to them a single standard." *Bus. Guides, Inc. v. Chromatic Commc'n Enters., Inc.*, 498 U.S. 533, 548, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). Thus, the standard of objective reasonableness under the circumstances applies whether the person against whom sanctions are sought is an attorney, a pro se litigant, or both. *Wesley v. Don Stein Buick, Inc.*, 184 F.R.D. 376, 378 (D. Kan. Nov. 30, 1998).

Defendants move for sanctions against plaintiff on the grounds that plaintiff has filed pleadings and motions containing various frivolous legal theories and false factual allegations (doc. #25).[35] For example, defendants assert that plaintiff has falsely alleged the following: that Mr. Snyder informed the police that she was Ms. McCunn and had committed a crime, that she was held at gun point for over two hours, that Mr. Snyder attempted to break into her home, that Mr. Snyder assaulted her, that Mr. Snyder inflicted emotional distress upon her, that Mr. Snyder was responsible for the officers surrounding her home, and that she was subjected to a search and seizure. Defendants also contend that plaintiff has asserted frivolous legal theories concerning the filing of forms prior to a bail bondsman's arrest and Mr. Snyder's alleged failure to follow proper procedure.

---

[35] Plaintiff moves to strike this motion (doc. #25) as well as defendants' motion to dismiss under 28 U.S.C. Section 1915(e) (doc. #26) because defendants filed these motions without the name of the attorney listed after the s/ on the signature block, as required by D. Kan. Rule 5.4.8(b). As the Court denies both motions in any event, the Court denies plaintiff's motion to strike (doc. #53).

Finally, defendants assert that plaintiff has made various false statements in motions for additional time to answer the pending dispositive motion. Defendants seek payment of attorneys fees incurred in responding to plaintiff's filings, as well as dismissal of her claims.[36]

The Court is not persuaded that plaintiff should be sanctioned by the payment of defendants' attorney's fees.[37] "Our legal system is premised on advocacy, and parties will inevitably advance losing arguments that do not necessarily warrant sanctions." *Wesley,* 184 F.R.D. at 378. While plaintiff did appear to assert legal claims that she may not have prevailed on had their merits been considered, she also asserted many valid legal theories and properly supported them with factual contentions. Moreover, plaintiff provided affidavit evidence concerning many of her factual allegations that defendants contend are inaccurate, and the Court is in no position to assess the truth of the properly supported accusations made by each side. Finally, plaintiff's *pro se* and *in forma pauperis* status weighs against the imposition of monetary sanctions.[38] Thus, the Court denies defendants' initial motion for sanctions (doc. #25).[39]

---

[36] The Court need not consider whether to dismiss plaintiff's claims for Rule 11 violations since the Court finds that plaintiff's claims must be dismissed on other grounds.

[37] Defendants assert that their motion should be granted because plaintiff did not timely file a response. See doc. #63. However, the Court finds that sanctions are unwarranted.

[38] In the Motion to Dismiss Pursuant to 28 U.S.C. Section 1915(e), Defendant Snyder again requests sanctions, but seeks dismissal, acknowledging that plaintiff likely has no ability to pay an appropriate monetary sanction. *See* doc. #27.

[39] The Court also notes that defendants failed to present any evidence along with their motion for sanctions that the motion was filed in compliance with the twenty-one day safe harbor provision of Fed.R.Civ.P. 11(c)(1)(A). It was only in Mr. Snyder's Motion to

Defendants have also moved for sanctions because plaintiff filed a motion under Rule 56(f), seeking for the Court to re-open discovery so that plaintiff might properly respond to the pending dispositive motion (doc. #41).  Defendants assert that plaintiff should be sanctioned because Magistrate Judge O'Hara previously ordered discovery stayed, and explained to plaintiff that if discovery were needed to respond to the dispositive motion, plaintiff needed to file an affidavit articulating the specific discovery needed and its relevance to the defendants' arguments.  *See* doc. #28.  According to defendants, plaintiff sought discovery merely to assert frivolous legal theories despite Judge O'Hara warning her not to, and was not sufficiently specific concerning the discovery needed or its relevance.  After considering the record, the Court is not persuaded that sanctions are warranted.  Even if plaintiff did not adequately explain its relevance, plaintiff did specify the type of discovery she believed she needed.  Moreover, plaintiff did not seek discovery *merely* to assert frivolous legal theories.  For example, she sought discovery on the relationship between Mr. Snyder and Aarecorp, a matter clearly relevant to some of her claims had she not otherwise been time-barred from alleging claims against Aarecorp and Mr. Rolf.  Finally, the Court observes that the defendants' motion should be denied for procedural reasons.  Rule 11 contains a "safe harbor" provision that prohibits a party from presenting a motion for sanctions to the court "unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is

---

Dismiss Pursuant to 28 U.S.C. § 1915(e) (doc. #26) that defendants asserted compliance with this requirement and provided any evidence of it.

not withdrawn or appropriately corrected." Fed.R.Civ.P. 11(c)(1)(A); *see also AreoTech, Inc. v. Estes*, 110 F.3d 1523, 1528-29 (10th Cir. 1997) (holding compliance with the safe harbor provision is mandatory). There is no evidence that defendants served plaintiff with their motion for sanctions twenty-one days before filing it. *See McCormick v. City of Lawrence,* 218 F.R.D. 687, 691 (D. Kan. 2003) (noting that dismissal would be warranted where defendants did not comply with the twenty-one day requirement). *See also Hughes v. SSI*, 2002 WL 922129, at *2 (D. Kan. Apr. 18, 2002) (denying a motion for sanctions under Rule 11 where the moving parties did not demonstrate compliance with the requirements for such a motion, including the safe-harbor requirement). Thus, the Court denies this motion as well (doc. #41).

Finally, plaintiff requests that this Court issue sanctions against defendants[40] because defendants filed their motions for sanctions (doc. #25 and #41) and motion to dismiss under 28 U.S.C. § 1915(e) (doc. #26) without the name of the attorney listed after the s/ on the signature block, as required by D. Kan. Rule 5.4.8(b). *See* doc. #54. Plaintiff also requests sanctions because defendants sent her "another document that was not filed at all with the court mid May 2010 and that was unsigned so as to harass her and prevent her from making her deadline to answer Summary Judgment." As for this latter document sent in mid-May, plaintiff appears to be referring to the defendant's submission to plaintiff of the original Motion for Sanctions (doc. #25). Defendants were required by

---

[40] Plaintiff did not file a formal motion for sanctions. She alleged this in a document entitled "Plaintiff's Response to Defendant Snyder's Objections to Plaintiff's Motion for Discovery to be Allowed Under Rule 56f and For Additional Motion for Sanctions Filed July 1, 2010, Plaintiff's Motion to Strike Pleading" (doc. #54).

Fed.R.Civ.P 11 to send plaintiff this motion prior to filing it with the Court, so as to give plaintiff a chance to withdraw her allegedly frivolous and false statements. This is therefore a wholly meritless basis for requesting sanctions. Moreover, plaintiff herself failed not only to actually title her request for sanctions as a motion for sanctions (*see* doc. #54), but failed to comply with this same twenty-one day safe harbor requirement. Plaintiff's *pro se* status does not entitle her to disregard procedural rules. Thus, plaintiff's motion is denied.[41]

**IT IS THEREFORE ORDERED BY THE COURT** that the Combined Motion of Defendant Roy Delbert Snyder, Jr., Shane L. Rolf, and Aarecorp Bonding, LP to Dismiss or for Summary Judgment (doc. #12) is **granted**. The Court **denies** Defendant Snyder's Motion for Sanctions (doc. #25) and Defendant Snyder's Additional Motion for Sanctions (doc. #41). The Court **denies** as moot the following motions made by defendant: Defendant Snyder's Motion to Dismiss Pursuant to 28 U.S.C. Section 1915(e) (doc. #26)[42]; Defendant Snyder's Motion to Strike Supporting Affidavits, Exhibits, and

---

[41] Plaintiff's request for sanctions would also be denied regardless because sanctions would not be warranted in this situation. Although D. Kan. Rule 5.4.8(b) requires that the name of the filing user be typed into the space where the name would otherwise appear after the "s/," D. Kan. Rule 5.4.8(a) states that the user log-in and password serve as the user's signature on all electronic documents filed with the Court and also serve as the signature for purposes of the Federal Rules of Civil Procedure, including Rule 11.

[42] In the Motion to Dismiss pursuant to 28 U.S.C. § 1915(e), defendant Snyder asserted that plaintiff filed this action for malicious purposes and has asserted frivolous claims, and that, as plaintiff has been granted *in forma pauperis* status, the Court must dismiss her complaint with prejudice under Fed.R.Civ.P. 15(e). The Court has concluded that plaintiff cannot state any federal claims against Mr. Snyder because he did not act under

Second Proposed Amended Complaint (doc. #58); Defendant Snyder's Motion to Strike,

Objections to Plaintiff's Pleadings and Motion for Extension of Time (doc. #59);

Defendant Snyder's Request for Clarification and Alternative Relief (doc. #63); and

Defendant Snyder's Motion to Strike Document 55 and All Plaintiff's Subsequent

Pleadings (doc. #64).

The Court **denies** plaintiff's Motion to Amend Petition (docs. #29 and 46) because

amendment would be futile. The Court also **denies** plaintiff's Motion for Discovery to be

Allowed by Court Under Rule 56(f) (doc. #32). Although the Court considered all

documents and exhibits submitted by plaintiff, the Court **denies** Plaintiff's Motion under

Rule 60b1 Section 2857 for Relief from Order of July 14, 2010 Denying Plaintiff Extra

Time to Submit Exhibits, Answers to Uncontroverted Facts, and Case Roster, Plaintiff's

Motion to Submit Exhibits, Both Specific Exhibits Filed July 14, 2010 and Remaining

Exhibits in Support of Her Answer for Defendants' Motion for Summary Judgment Out

of Time, Plaintiff's Motion to Submit Her Case and Exhibit Rosters and Her Answers to

Defendants' Uncontroverted Facts Out of Time (doc. #55). The Court also **denies**

Plaintiff's Response to Defendant Snyder's Motion for Sanctions Filed June 17, 2010,

Plaintiff's Second Request for Additional Time to Answer These Two Motions for

Dismissal and Sanctions if This Motion is Not Stricken, Plaintiff's Response to

Defendant Snyder's Motion to Dismiss Under 28 USC 1915(e), Plaintiff's Motion to

---

color of state law. Moreover, the Court will not exercise jurisdiction over plaintiff's
remaining state law claims. As the Court dismisses all claims against Mr. Snyder for
other reasons, it denies as moot the Motion to Dismiss Pursuant to 28 U.S.C. § 1915(e)
(doc. #26).

Strike Both Pleadings (doc. #53); Plaintiff's Response to Defendant Snyder's Objections to Plaintiff's Motion for Discovery to be Allowed Under Rule 56(f) and for Additional Motion for Sanctions Filed July 1, 2010, Plaintiff's Motion to Strike Pleading (doc. #54); and Plaintiff's Request for Additional Time to Respond to Defendant Snyder's Supplemental Suggestions…and Notice of Clarification…(doc. #61).[43]

**IT IS SO ORDERED**.

Dated this 9th day of August, 2010, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[43] On July 6, Mr. Snyder filed a document entitled "supplemental suggestions," which stated that there is no Kansas law requiring a bounty hunter or the company that he works for to file a "form" prior to apprehending an individual. Rather, K.S.A. § 22-2809 requires a bounty hunter to *inform* law enforcement about the intended apprehension beforehand. Plaintiff need not be granted any time to respond to this, as it was irrelevant to the Court's analysis whether a bounty hunter must file a form or merely inform law enforcement of the intended apprehension. Moreover, despite plaintiff's construction of it, the document entitled "supplemental suggestions" was not a motion.